UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GREGORY BALZ,

                                        Plaintiff,

        v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

                                        Defendant.[1]

No. 20-CV-7729 (KMK) (PED)

ORDER ADOPTING REPORT &
RECOMMENDATION

Appearances:

Richard Seelig, Esq.
Seelig Law Offices, LLC
New York, NY
*Counsel for Plaintiff*

Christopher Hurd, Esq.
United States Attorney's Office
New York, NY
*Counsel for Defendant*

KENNETH M. KARAS, United States District Judge:

        Gregory Balz ("Plaintiff") brings this Action against the Acting Commissioner of Social

Security ("Defendant" or the "Commissioner"), pursuant to 42 U.S.C. § 405(g), challenging the

decision of an administrative law judge ("ALJ") to deny Plaintiff's application for a period of

disability and disability insurance benefits on the ground that Plaintiff is not disabled within the

meaning of the Social Security Act, 42 U.S.C. §§ 423, et seq.  (*See* Compl. (Dkt. No. 1).)  On

September 28, 2020, the Court referred the case to Magistrate Judge Paul E. Davison ("Judge

---

        [1] As Judge Davison's Report and Recommendation noted, Kilolo Kijakazi is now the
Acting Commissioner of Social Security and is substituted for former Commissioner Andrew
Saul as the defendant in this Action, pursuant to Federal Rule of Civil Procedure 25(d).

Davison") pursuant to 28 U.S.C. § 626(b)(1)(A).  (*See* Dkt. No. 5.)  Plaintiff and Defendant both moved for judgment on the pleadings.  (*See* Dkt. Nos. 19, 24.)  On January 25, 2022, Judge Davison issued a Report and Recommendation ("R&R") recommending that the Court grant Plaintiff's Motion for Judgment on the Pleadings ("Plaintiff's Motion"), deny Defendant's Cross-Motion for Judgment on the Pleadings ("Defendant's Motion"), and remand the case for further administrative proceedings.  (*See* R&R 44 (Dkt. No. 27).)  Defendant filed Objections to the R&R on February 8, 2022, (*see* Def.'s Obj's to the R&R ("Def.'s Obj's") (Dkt. No. 29)), and Plaintiff filed a Response on February 22, 2022, (*see* Pl.'s Resp. to Def.'s Obj's ("Pl.'s Resp.") (Dkt. No. 30)).  For the reasons discussed below, the Court adopts the result recommended in the R&R and overrules Defendant's Objections.

## I.  Discussion

### A.  Standard of Review

#### 1.  Review of a Report and Recommendation

A district court addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge."  28 U.S.C. § 636(b)(1). Pursuant to § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), parties may submit objections to the magistrate judge's report and recommendation.  The objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition."  FED. R. CIV. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

When a party submits timely objections to a report and recommendation, the district court reviews de novo the parts of the report and recommendation to which the party objected.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(3).  The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, so long as the factual and legal bases supporting the findings and conclusions set forth in those sections are

not clearly erroneous or contrary to law." *Rogers v. Astrue*, 895 F. Supp. 2d 541, 547 (S.D.N.Y. 2012) (quoting FED. R. CIV. P. 72(b)(2)). "[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision." *Caidor v. Onandaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (citation omitted); *see also Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 517 (S.D.N.Y. 2013) (refusing to consider objections filed one day late). Moreover, "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review [of the magistrate's recommendations]." *Belen v. Colvin*, No. 14-CV-6898, 2020 WL 3056451, at *2 (S.D.N.Y. June 9, 2020) (alteration, citation, and italics omitted); *see also George v. Pro Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 434 (S.D.N.Y. 2016) (same).

### 2.  Review of a Social Security Claim

In evaluating a social security claim, the reviewing court does not determine for itself whether the plaintiff was disabled and therefore entitled to social security benefits. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("[W]e do not substitute our judgment for the agency's, or determine de novo whether the claimant was disabled." (citations, quotation marks, alterations, and italics omitted)). Instead, the reviewing court considers merely "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). Accordingly, a court may overturn an ALJ's determination only if it was "'based upon legal error'" or "'not supported by substantial evidence.'" *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998)); *see also Cage*, 692 F.3d at 122 ("[W]e conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision." (alteration in original) (quoting *Moran v.*

3

*Astrue*, 569 F.3d 108, 112 (2d Cir. 2009))). "Substantial evidence, however, is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rosa*, 168 F.3d at 77 (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (same). In considering whether substantial evidence supports the ALJ's decision, the reviewing court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted).

In determining whether a claimant is entitled to disability insurance benefits, the ALJ follows a five-step analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, [the] claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity [("RFC")] to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). The claimant bears the burden of proof for the first four steps. *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If, however, the claimant proves that his impairment prevents him from performing his past

work, the burden shifts to the Commissioner at the fifth step. *See id.* There, the Commissioner

must prove "that there is other gainful work in the national economy that [the claimant] could

perform." *Kamerling v. Massanari*, 295 F.3d 206, 210 (2d Cir. 2002). If the ALJ determines

that a "significant number of jobs exist in the national economy that the claimant can perform,"

*McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014), the ALJ must deny disability insurance

benefits to the clamant, *see* 20 C.F.R. § 404.1520(a)(4)(v).

### B. Analysis

The Court adopts the recitation of facts set forth by Judge Davison in the R&R except

where specifically noted below, (*see* R&R 2–25), and assumes the Parties' familiarity with it.

The Court will repeat only those facts relevant to the consideration of Plaintiff's Objections.

To begin, the Court notes that the Parties agree on the ALJ's application of certain of the

aforementioned five steps in evaluating Plaintiff's social security claim. With respect to the first

step, no Party disputes that Plaintiff was not engaged in gainful employment at the time the

application was considered. (*See* Compl. Ex. B ("ALJ Op."), at 4 (Dkt. No. 1-2).) Nor does

either Party dispute that, at step two, the "severe" impairments at issue are Plaintiff's sarcoidosis

with liver calcifications; asthma; brain aneurysm; obstructive sleep apnea; degenerative changes

of the knees and chondromalacia; lumbar spine degenerative disc disease and radiculopathy; and

cervical spine degenerative disc disease and radiculopathy. (*See id.* at 4.) While Plaintiff

additionally suffers from certain other impairments, including hypertension, gastroesophageal

reflux disease ("GERD"), carpal tunnel syndrome, and periodic limb movement disorder, neither

Party disputes that these impairments are not "severe" within the meaning of relevant

regulations. (*See id.* at 4–5.) The ALJ thus found, at step three, that Plaintiff "does not have an

impairment or combination of impairments that meets or medically equals the severity of one of

the listed impairments on 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR [§§] 404.1520(d),

404.1525, and 404.1526)"—a conclusion which, again, appears to be undisputed. (*Id.* at 5.)

Rather, the Parties' dispute centers around the ALJ's finding at step four, in which the

ALJ determined that Plaintiff "has the [RFC] to perform sedentary work as defined in 20 CFR

[§] 404.1567(a)." (*Id.*) Specifically, the ALJ found that Plaintiff "can occasionally climb ramps

and stairs"; "can never climb ropes, ladders, or scaffolds"; "can occasionally stoop, balance,

crouch, kneel, and crawl"; "can have no exposure to unprotected heights and hazardous

machinery"; and "must avoid exposure to respiratory irritants such as fumes, odors, dust, gases,

and poorly ventilated areas." (*Id.* at 5–6.) The ALJ also determined that Plaintiff "requires a

position that allows him to alternate sitting and standing at will provided he is not off task more

than 5% of the workday." (*Id.* at 6.) Based on these findings, the ALJ found that Plaintiff is

unable to perform any past relevant work. (*See id.* at 12–13.) Finally, at step five—as a result of

the ALJ's disputed finding at step four—the ALJ concluded that "[c]onsidering [Plaintiff's] age,

education, work experience, and [RFC], there are jobs that exist in significant numbers in the

national economy that the claimant can perform." (*Id.* at 13–14.)

Defendant objects to Judge Davison's recommendation that Plaintiff's Motion be granted

and Defendant's Motion be denied. (*See* R&R 44; *see also* Def.'s Obj's.) While Defendant

advances a number of separate objections to the R&R, Defendant's arguments ultimately boil

down to disputes regarding whether Judge Davison (1) applied the correct standards in

evaluating the various medical opinions in the administrative record and (2) properly found that

the ALJ's finding that Plaintiff was not disabled was not supported by substantial evidence. (*See*

*generally* Def.'s Obj's.) The Court will address each, in turn.

1.  Evaluation of Medical Opinions

Defendant first objects to the manner in which Judge Davison evaluated the ALJ's findings that the opinions of Drs. Justin Porto and A. Auerbach were persuasive and that the opinion of Dr. Kevin Weiner was not persuasive.  (*See* Def.'s Obj's 2–3.)  To the extent that Defendant objects on the ground that Judge Davison applied the wrong standard in finding that the ALJ had not properly applied the requirements set forth in 20 C.F.R. §§ 404.1520c(a)–(c) in considering Drs. Porto, Auerbach, and Weiner's opinions, the Court disagrees.

Previously, when determining eligibility for disability insurance benefits, the Social Security Administration presumptively gave more weight to opinions from claimants' treating physicians, because treating physicians would be more likely to be able to provide a detailed longitudinal picture of the claimants' medical conditions.  *See, e.g.*, *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (explaining that the "treating physician rule" "requires a measure of deference to the medical opinion of a claimant's treating physician").  However, as Judge Davison explained, on January 18, 2017, the Commissioner published new rules governing the evaluation of medical evidence, which altered the longstanding "treating physician rule" for claims filed after March 27, 2017.  (*See* R&R 29.)  "Under the new regulations, a treating doctor's opinion is no longer entitled to a presumption of controlling weight."  (*Id.* (quoting *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941, 2021 WL 3475626, at *8 (S.D.N.Y. Aug. 6, 2021)).)  "Instead, all medical opinions must be evaluated for their persuasiveness based on: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's specialization; and (5) other relevant factors."  (*Id.* (citing 20 C.F.R. §§ 404.1520c(a)–(c)).)  "The ALJ's duty to articulate a rationale for each factor varies.  Under the new regulations, the ALJ must 'explain' in all cases, 'how he or she considered' both the supportability and consistency factors, as they are 'the most important factors.'"  *Rosario v.*

*Comm'r of Soc. Sec.*, No. 20-CV-7729, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022)

(citation and alterations omitted) (quoting 20 C.F.R. § 416.920c(b)(2)).  And, as Judge Davison

explained, "in most instances, an ALJ 'must consider, but need not explicitly discuss, the three

remaining factors in determining the persuasiveness of a medical sources's opinion.'"  (R&R 30

(quoting *Amber H. v. Saul*, No. 20-CV-490, 2021 WL 2076219, at *5 (N.D.N.Y. May 24,

2021)).)  "However, 'where the ALJ has found two or more medical opinions to be equally well

supported and consistent with the record, but not exactly the same, the ALJ must articulate how

he or she considered those factors contained in paragraphs (c)(3) through (c)(5).'"  (*Id.* (quoting

20 C.F.R. § 404.1520c(b)(3)).)

Defendant argues that in finding that the ALJ had not properly weighed the medical

opinion evidence, Judge Davison improperly imposed an obligation on the ALJ to explicitly

discuss factors other than consistency and supportability.  (*See* Def.'s Obj's 2.)  First, the Court

notes that this is not a genuine objection.  Defendant included a very similar argument in her

brief in support of her Motion, (*see* Def.'s Mem. of Law in Supp. of Def.'s Mot. for Judg. on the

Pleadings 9–11 (Dkt. No. 25)), and, as explained, "objections that are merely perfunctory

responses argued in an attempt to engage the district court in a rehashing of the same arguments

set forth in the original papers will not suffice to invoke de novo review [of the magistrate's

recommendations]."  *Belen*, 2020 WL 3056451, at *2 (alterations, citation, and italics omitted);

*see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("It is improper for an

objecting party to attempt to relitigate the entire content of the hearing before the [m]agistrate

[j]udge by submitting papers to a district court which are nothing more than a rehashing of the

same arguments and positions taken in the original papers submitted to the [m]agistrate [j]udge."

(citation omitted)).

Second, it is clear that Judge Davison imposed no such obligation on the ALJ. Rather, Judge Davison found that the cursory nature of the ALJ's conclusions that the medical opinions of Drs. Auerbach and Porto were persuasive while that of Dr. Weiner was not demonstrated that the ALJ could not have appropriately considered all five relevant factors for each opinion, including because proper consideration of all five factors likely would have mandated different conclusions. (*See* R&R 41–44.) For example, the ALJ dismissed the opinion of Plaintiff's treating physician, Dr. Weiner, in a single paragraph, explaining simply that "Dr. Weiner assessed an extremely restrictive [RFC], despite relatively benign medical reports throughout the record," and that Dr. Weiner's "opinion is inconsistent with [Plaintiff's] demonstrated activities of daily living," including Plaintiff's ability to exercise and drive. (ALJ Op. 12.) But as a preliminary matter, "[w]here an ALJ 'merely states' that an examining physician's opinion is 'not consistent with the overall medical evidence,' he has failed to adequately explain his conclusions regarding the consistency factor," *Brianne S. v. Comm'r of Soc. Sec.*, No. 19-CV-1718, 2021 WL 856909, at *5 (W.D.N.Y. Mar. 8, 2021) (quoting *Raymond M. v. Comm'r of Soc. Sec.*, No. 19-CV-1313, 2021 WL 706645, at *10 (W.D.N.Y. Feb. 22, 2021))—a factor which all Parties agree the ALJ has an obligation under relevant regulations to both consider and discuss. (*See* Def.'s Obj's 2 ("Under the new regulations, an ALJ is required to explain how he considered consistency and supportability, but [is] not required to explain how he considered any of the other relevant factors.").)

Moreover, the Court agrees with Judge Davison that the ALJ's failure to even mention the fact that Dr. Weiner's opinion is the only medical opinion in the record from a treating physician—who had been treating Plaintiff for over a year at the time he rendered his medical opinion, (*see* Def.'s Obj's 3)—constitutes compelling evidence that the ALJ lent insufficient

weight to at least the third factor.[2]  Despite the fact that the new regulations have eliminated the presumptive deference provided to treating physicians, courts applying the new regulations have explained that "the essence of the [treating physician rule] remains the same." *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502, 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021).  As such, ALJs still must consider the fact that "[b]ecause a treating source examines a claimant directly, they may have a better understanding of a claimant's impairment(s)," *Soto v. Comm'r of Soc. Sec.*, No. 14-CV-4631, 2020 WL 5820566, at *4 (E.D.N.Y. Sept. 30, 2020) (alteration and quotation marks omitted); "the new regulations cannot be read as a blank check giving ALJs permission to rely solely on agency consultants while dismissing treating physicians in a conclusory manner," *Amber H.*, 2021 WL 2076219, at *8 (alteration omitted) (quoting *Dany Z. v. Saul*, No. 19-CV-217, 2021 WL 1232641, at *12 (D. Vt. Mar. 31, 2021)).  With the above in mind, this Court shares Judge Davison's doubt that the ALJ here afforded Dr. Weiner's opinion

_____

[2] Defendant objects to Judge Davison's finding that Dr. Weiner had been treating Plaintiff since March 2014, when Dr. Weiner had actually only begun to treat Plaintiff in November 2018.  (*See* Def.'s Obj's 2–3.)  Defendant argues that "[t]his factual error is significant because the R&R relies on the mistaken belief that Dr. Weiner had treated Plaintiff extensively throughout the relevant period to conclude that the ALJ improperly evaluated Dr. Weiner's functional assessment that Plaintiff could perform less than sedentary work." (*Id.* at 3.)  While Defendant is correct that Judge Davison's finding that Dr. Weiner had been treating Plaintiff since March 2014 was in error, (*see, e.g.*, Admin. Record 955 (Jan. 2, 2020 notes from Dr. Weiner: "This is an updated narrative for [Plaintiff] who was originally seen on 11/07/2018") (Dkt. No. 18-4)); *see also* Pl.'s Mem. of Law in Supp. of Pl.'s Mot. for Judg. on the Pleadings 3 ("Plaintiff received treatment from Dr. Kevin H. Weiner . . . from the end of 2018 to 2020.") (Dkt. No. 20)), the Court disagrees that this mistake is significant.

The only two other medical opinions in the record are those of Dr. Porto, who examined Plaintiff once, and Dr. Auerbach, who did not examine Plaintiff at all.  (*See* Admin. Record 53–61 (Dkt. No. 18), 823–28 (Dkt. No. 18-4).)  While Dr. Weiner may not have examined Plaintiff for a period of six years, he indisputably examined Plaintiff extensively for a period of over one year—and over approximately 12 separate visits, many of which included imaging studies and other objective testing, (*see, e.g.*, R&R 9–20)—and was thus clearly "in the best position to provide a longitudinal analysis [of] how Plaintiff's ability to function had changed over time," (*id.* at 44).

appropriate consideration, which alone merits remand. *See Rosa*, 168 F.3d at 82–83 ("Where there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the [Commissioner] for further development of the evidence." (alteration in original) (quoting *Pratts*, 94 F.3d at 39)).

### 2. Lack of Substantial Evidence

Defendant also lodges a number of objections to Judge Davison's conclusion that the ALJ's finding as to Plaintiff's RFC was not based on substantial evidence, primarily arguing that: (1) the ALJ properly inferred from Dr. Porto's opinion that Plaintiff should avoid respiratory irritants that Plaintiff had no functional limitations beyond avoiding respiratory irritants, and thus, Dr. Porto's opinion constitutes substantial evidence that Plaintiff has the RFC to perform sedentary work, (*see* Def.'s Obj's 3–5); (2) the ALJ properly found that Dr. Auerbach's opinion that Plaintiff could perform the exertional requirements of light work constitutes substantial evidence that Plaintiff has the RFC to perform sedentary work, after the ALJ took into consideration additional medical records indicating Plaintiff's deteriorating condition added to Plaintiff's file after Dr. Auerbach rendered his opinion, (*see id.* at 5–7); (3) the ALJ properly credited objective observations from Plaintiff's medical providers as to Plaintiff's ability to exercise in support of the ALJ's finding that Plaintiff had the RFC to perform sedentary work, (*see id.* at 8–10); and (4) the ALJ properly credited "the longitudinal medical record which showed largely stable and benign examination findings" in support of the ALJ's finding that Plaintiff had the RFC to perform sedentary work, (*id.* at 10–14). At bottom, all of Defendant's objections constitute disputes over the interpretation or weight of specific pieces of evidence, none of which can overcome the fundamental flaw in the ALJ's opinion: there is no affirmative evidence in the record that Plaintiff has the RFC to perform sedentary work.

Contrary to Defendant's urging, neither Dr. Porto nor Dr. Auerbach found that Plaintiff has the RFC to perform sedentary work. Dr. Auerbach found that Plaintiff has the RFC to perform light work, and Dr. Porto made no finding as to Plaintiff's RFC at all. (*See* Admin. Record 53–61 (Dkt. No. 18), 823–28 (Dkt. No. 18-4).) And, of course, Dr. Weiner found that Plaintiff is "totally disabled from all forms of employment[,] including sedentary work." (*Id.* at 957 (Dkt. No. 18-4).) As such, in concluding that Plaintiff has an RFC to perform sedentary work, the ALJ simply split the difference between Dr. Auerbach and Dr. Weiner's findings, but "[m]edical evidence at both ends of the spectrum . . . is not substantial evidence for a finding that the extent of the disability is fifty percent." *Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014) (summary order); *see also McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.").

Nor is the Court convinced that Dr. Porto's finding that Plaintiff should avoid respiratory irritants constitutes substantial evidence of anything beyond a conclusion that Plaintiff should avoid respiratory irritants. Defendant cites to the Second Circuit's observation in *Dumas v. Schweiker*, 712 F.2d 1545 (2d Cir. 1983), that the Commissioner "is entitled to rely not only on what the record says, but also on what it does not say," *id.* at 1553, as support for her assertion that "[i]f Dr. Porto had concluded that Plaintiff had functional limitations beyond avoiding respiratory irritants, it is reasonable to infer that he would have included them in his opinion." (Def.'s Obj's 4.) However, the *Dumas* court made this observation in the entirely different context of upholding an ALJ's finding that a claimant who reported suffering from "disabling pain" lacked credibility where there was no indication in the record that the claimant "continually suffered, prior to now, from headaches so devastating as to render him unable to

work." 712 F.3d at 1553. And perhaps more importantly, Defendant's argument ignores the well-settled principle that "the ALJ generally has an affirmative obligation to develop the administrative record," a duty that "exists even when the claimant is represented by counsel." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); *see also Butts*, 388 F.3d at 386 ("It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits." (alteration and citation omitted)). As such, in order to conclude that Plaintiff, in fact, has no functional limitations apart from avoiding respiratory irritants, the ALJ was duty-bound to investigate and further develop the record, rather than "simply assume[] that Dr. Porto opined that Plaintiff had no other limitations, which the ALJ cannot do." (R&R 39.) And, in any event, as stated above and explained by Judge Davison, "Dr. Porto's silence on Plaintiff's physical capabilities cannot constitute substantial evidence to demonstrate the ability to perform sedentary work." (*Id.*)

None of Defendant's disputes regarding Judge Davison's weighing of the other evidence changes the Court's conclusion. Regardless of the ALJ's view of Plaintiff's ability to exercise or the stability of Plaintiff's medical condition as reflected in certain of Plaintiff's medical records, "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination without a medical advisor's assessment is not supported by substantial evidence." *Dailey v. Astrue*, No. 09-CV-99, 2010 WL 4703599, at *11 (W.D.N.Y. Oct. 26, 2010) (alterations and citation omitted); *see also id.* ("Where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities . . . the Commissioner may not make the connection [her]self." (alterations and citation omitted)); *see also MaryAnne V. v. Comm'r of Soc. Sec.*, No. 20-CV-412, 2021 WL 3560584, at *3 (W.D.N.Y. Aug. 12, 2021) ("[T]he [c]ourt's

deferential review does not give an ALJ the license to arbitrarily craft functional limitations, translate raw medical date into functional terms, or unreasonably draw highly specific inferences from the nonspecific evidence." (citations omitted)); *cf. McBrayer*, 712 F.2d at 799 ("While an administrative law judge is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who testified before him." (alterations and citation omitted)).

Accordingly, the Court finds that remand is warranted.

## II.  Conclusion

For the foregoing reasons, the Court adopts Judge Davison's R&R, denies Defendant's Motion for Judgment on the Pleadings, and grants Plaintiff's Motion for Judgment on the Pleadings.  The final decision of the Commissioner is reversed and the Court remands this matter for further administrative proceedings in accordance with this ruling.  The Clerk of Court is respectfully directed to terminate the pending Motions, (*see* Dkt. Nos. 19, 24), and close this case.

SO ORDERED.

Dated:    March 30, 2022
          White Plains, New York

_____
    KENNETH M. KARAS
  United States District Judge